FILED

2012 Mar-05  PM 01:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **RICKY GREEN,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| **vs.** | ) | |
| | ) | Civil Action Number |
| **CITY OF BIRMINGHAM,** | ) | **2:10-cv-2591-AKK** |
| **ALABAMA** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the City of Birmingham, Alabama's ("the City") motion for summary judgment on all claims alleged by Plaintiff Ricky Green ("Green"). Doc. 19.  The motion is fully briefed, docs. 24, 25, 27, and ripe for review.  For the reasons stated more fully herein, the City's motion is **DENIED** as it relates to the Family and Medical Leave Act ("FMLA") and the Americans with Disabilities Act ("ADA") claims, but **GRANTED** in all other respects.

A Pretrial Conference will be held in the Chambers of the Undersigned on **April 23, 2012 at 10:45 A.M.** at the Hugo L. Black U.S. Courthouse in Birmingham, Alabama.  This case is set for jury trial on **June 11, 2012 at 9:00 A.M.** at the Hugo L. Black U.S. Courthouse in Birmingham, Alabama.

## I.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary

judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." To support a summary judgment motion, the parties must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v.*

*England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.   FACTUAL AND PROCEDURAL HISTORY

This case arises from Green's former employment as an air-conditioning and heating, or HVAC, technician with the City.  Doc. 1, at 1-2.  On October 6, 2008, after approximately fifteen years of employment with the City, doc. 25-3, at 6, Green requested an unpaid leave of absence for six to twelve weeks, from October 9, 2008 until January 9, 2009, in order to have triple bypass cardiac surgery.  Doc. 25-2; doc. 25-6.  Green submitted medical documentation in support of this request signed by Dr. Stanley R. Lochridge.  Doc. 25-2.  On October 11, 2008, Green also signed a "Letter of Understanding" that explained the conditions for approval of a leave of absence request.  Doc. 25-20.

The City approved Green's FMLA leave request, but made it effective for November 24, 2008 to March 9, 2009.  Doc. 25-21.  Green underwent surgery on October 14, 2008, doc. 25-3, at 8, and on November 26, 2008, Dr. James R. Trimm cleared Green's return to work with no restrictions.  Doc. 25-7.  On December 15, 2008, Green returned to his HVAC technician position.  Doc. 25-3, at 16.  However, eight days later, the City required Green to leave work because Dr.

James R. Trimm, as opposed to Dr. Stanley R. Lochridge, signed his work clearance papers. *Id.* at 15. On December 23, 2008, the City received "return to work" documents from Dr. Lochridge and allowed Green to return to work again. Doc. 20-6. Upon returning to work, Ricky Davis served as Green's immediate supervisor, and Charles Yates served as the Deputy Director of Public Works for the City, another supervisor for Green's position. Doc. 25-3, at 7.

When Green returned, he requested assistance from co-workers for certain tasks, such as lifting heavy equipment. *Id.* at 16. While co-workers provided such assistance, Green testified that Yates and Davis, although aware of Green's requests, never explicitly permitted this assistance. *Id.* Additionally, Green stated that on the one occasion when Davis promised Green assistance for a work order, the other employees never showed up. *Id.* at 18. As such, Green maintains that the City refused to provide him with the necessary manpower to complete dangerous work assignments. *Id.* at 20-21. *See also* doc. 20-19.

Moreover, the parties dispute the extent Green sought disability benefits after returning from medical leave. The record reveals a November 24, 2008 unsigned application for pension benefits in Green's name. Doc. 25-8. The record also reveals a November 24, 2008 appointment notice to Green from the Office of Personnel regarding a disability evaluation by the Pension Board's physician, Dr. Bruce Romeo. Doc. 25-11. On December 3, 2008, Green signed a document stating that he "applied for a disability benefit from the City of Birmingham's Retirement and Relief (R&R) pension fund," doc. 25-12; however, Green asserts

that he mistakenly signed this form in an attempt to obtain temporary benefits during his FMLA leave, doc. 25-4, at 6. *See also* docs. 25-13; 25-14. Likewise, Green denies submitting an unsigned March 1, 2009 application for pension benefits, doc. 20-11, that the City also produced. Doc. 24, at 10. Yet, it is undisputed that Green accumulated enough vacation and sick leave for a paid leave—and was, in fact, paid for almost all of the time he missed. *See* doc. 20, at 7-8; doc. 25-4, at 12.

On April 7, 2009, Green applied for disability benefits with the City's Retirement and Relief Pension Board, doc. 25-16, and on May 4, 2009, Green completed his pension packet, doc. 25-4, at 5. Green left the City's payroll on May 15, 2009, *id.* at 4, and receives monthly pension benefits in the amount of $1,366.99, doc. 25-5, despite no evidence of an actual disability.[1] *Id.*; *see also* doc. 25-10, at 13. However, the parties dispute whether Green voluntarily retired or whether his supervisors effectively forced Green to retire. Green maintains that he had to retire because, allegedly, although he returned from FMLA leave with no physician imposed health restrictions, doc. 20-6, his supervisors Yates and Davis repeatedly threatened and demanded that Green apply for disability retirement. Doc. 25-3, at 17; doc. 25-4, at 5, 7, 13.

Green filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 14, 2009, asserting that "[d]ue to

---

[1] Currently, Green is employed with Appliance Connection. Doc. 20-1, at 18.

the harassment and the intimidation, I believe I was forced to sign the disability retirement papers against my will." Doc. 20-14. The EEOC issued Green a Right to Sue letter on June 25, 2010, doc. 25-17, and Green filed this action on September 23, 2010, doc. 1.

### III.   ANALYSIS

Green seeks relief against the City for violations of the FMLA, doc. 1, at 4-6, the ADA, *id.* at 6-7, and Ala. Code § 21-7-1 et seq., *id.* at 7-8. The City moved for summary judgment on all claims, *see generally* docs. 19, 20, and the court addresses each claim below.

*A.    FMLA*

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1).[2] As such, "'[t]o preserve the availability of these rights, and to enforce them, the FMLA creates two types of claims: interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 2615(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, *see* 29 U.S.C. § 2615(a); 29 C.F.R. § 825.220(c).'" *Wascura v. City of S. Miami*, 257

---

[2] It is undisputed that Green is an eligible employee that suffered from a serious health condition. *See generally* docs. 20, 27.

F.3d 1238, 1247-48 (11th Cir. 2001) (quoting *Strickland v. Water Works and Sewer Bd. of the City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001)). Green alleges both retaliation and interference claims.  Doc. 1, at 4-6.

     i.     *Retaliatory Discharge*

To succeed under an FMLA retaliatory discharge theory, Green must demonstrate that he suffered an adverse employment action, "motivated by an impermissible retaliatory or discriminatory animus." *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010) (citations and quotation marks omitted).  Where, as here, there is no direct evidence of discriminatory animus, the Eleventh Circuit instructs that courts should utilize the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Schaaf*, 602 F.3d at 1243.  Under the *McDonnell Douglas* framework, the plaintiff must first create an inference of discrimination by establishing a *prima facie* case of discrimination.  *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006) (citation omitted).  If the plaintiff satisfies his initial burden, "then the defendant must show a legitimate, non-discriminatory reason for its employment action."  *Id*. (citation omitted).  "If it does so, then the plaintiff must prove that the reason provided by the defendant is a pretext for unlawful discrimination." *Id*. (citation omitted).  *See also Martin v. Brevard Cnty. Pub. Sch.*, 543 F.3d 1261, 1268 (11th Cir. 2008).  "A prima facie case of retaliation under the FMLA requires a showing that (1) the employee engaged in statutorily protected conduct, (2) the employee suffered an adverse

employment action, and (3) there is a causal connection between the two." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010).

Green contends that the City constructively discharged him because he took FMLA leave. Doc. 24, at 20-29. The City disagrees and argues that Green voluntarily retired, and therefore, no adverse employment action occurred. Doc. 20, at 18-20; doc. 27, at 5-9. It is undisputed that on October 11, 2008, Green submitted an FMLA Leave Request Form for a "serious health condition," docs. 20-3, 25-6, and it is also undisputed such action is statutorily protected, doc. 27, at 7. *See also Martin*, 543 F.3d at 1267-68. Therefore, the pertinent issue is whether Green can establish that the City constructively discharged him.

"Under the doctrine of 'constructive discharge,' . . . '[t]he general rule is that if the employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer . . . is as liable for any illegal conduct involved therein as if it had formally discharged the aggrieved employee.'" *Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1450 (11th Cir. 1998) (quoting *Young v. Southwestern Sav. and Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975) (alterations in original)). When considering a constructive discharge, the proper inquiry is "whether 'a reasonable person in [the plaintiff's] position would be compelled to resign.'" *Id.* (quoting *Steele v. Offshore Shipbuilding, Inc.*, 867 F.2d 1311, 1317 (11th Cir. 1989) (alteration in original)).

Taken in the light most favorable to Green, after his return from FMLA

leave, Yates and Davis, his supervisors, repeatedly harassed and intimidated Green into applying for disability retirement.  Doc. 25-3, at 17; doc. 25-4, at 7, 13. Indeed, Green stated that he signed the April 7, 2009 disability retirement papers because he "felt like Charles Yates and Ricky Davis was[sic] sitting there with a gun holding it to my head."  Doc. 25-4, at 5.  Moreover, on multiple occasions, the City refused to provide Green with the necessary manpower to help complete dangerous projects.  *See* doc. 25-3, at 20-21.  For example, co-employee Billy Burtram Dixon, Jr. testified that the City "sent Green to Fire Station 2 to change a 3,000 pound air compressor by himself."  Doc. 25-19, at 3.  While the City usually provides multiple HVAC technicians for such a project, when Green requested assistance, the City only sent Dixon, and, allegedly, due to the insufficient manpower, Dixon suffered a serious injury.  *Id.*

Green also alleges—although the City disputes, doc. 20, at 7, 9—that on November 24, 2008 and March 1, 2009, the City completed "Application for Pension Benefit Forms" in Green's name, which he refused to sign.  *See* docs. 25-8; 25-15.  Moreover, without Green's permission, the City also scheduled a doctor's appointment with its Pension Board physician.  Doc. 25-11.  Finally, the City approved disability pension payments for Green even though Green never submitted any medical evidence of a disability.  *See* doc. 25-5; doc. 25-10, at 13. Given this evidence of alleged repeated attempts by the City to force Green into disability retirement, an objectively reasonable person may have felt compelled to acquiesce to the City's demands.  *See Doe*, 145 F.3d at 1450.  As such, a jury issue

exists as to whether Green in fact suffered an adverse employment action.[3]

As Green demonstrates a *prima facie* case, the burden shifts to the City "to articulate a legitimate reason for the adverse action." *Martin*, 543 F.3d at 1268 (citation omitted).  The City reiterates that "Green was not terminated from his employment, but retired from the City," and therefore, Green "has not presented any evidence that his employer's actions were motivated by an impermissible retaliatory or discriminatory animus."  Doc. 20, at 19.  Put differently, the City argues that there can be no retaliation claim without an adverse employment action.  Doc. 27, at 5-9.  Again, however, taking the evidence in the light most favorable to Green, a reasonable jury could find the City's contention that Green "voluntarily retired" is merely pretext masking a constructive discharge for seeking relief under the FMLA.  *See Walker v. Mortham*, 158 F.3d 1177, 1185 n.12 (11th Cir. 1998) ("[I]n some cases, the plaintiff, in order to prove intentional discrimination, will not need to produce any more evidence than what was required to establish the *prima facie* case.").  Whether Green can ultimately sustain his burden and prove his claim is an issue for a jury to decide.  At this

---

[3] While not specifically addressed by the City, the court finds that Green also sufficiently evidences the third *prima facie* element for an FMLA retaliation claim—causation.  *See* doc. 24, at 28-29.  "The causal connection element is satisfied if a plaintiff shows that the protected activity and adverse action were 'not wholly unrelated.'" *Krutzig*, 602 F.3d at 1234 (quoting *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).  And indeed, "a plaintiff can show the two events are not wholly unrelated if the plaintiff shows that the decision maker was aware of the protected conduct at the time of the adverse employment action." *Id.* Here, Charles Yates and Ricky Davis were aware of Green's FMLA leave, doc. 25-10, at 17, and also purportedly forced Green into disability retirement.  *See* doc. 25-3, at 17; doc. 25-4, at 7, 13.

juncture, the court must only determine whether Green presents enough evidence to establish pretext—which the court finds he has.  Therefore, the City's motion for summary judgment on the FMLA retaliation claim is **DENIED**, and a jury must decide whether the City constructively discharged Green by forcing him into an involuntary disability retirement.[4]

   *ii.   Interference*

   "To state a claim of interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he was entitled to a benefit denied." *Strickland*, 239 F.3d 1199, at 1206-07.  And indeed, the federal regulations provide that "[t]he FMLA prohibits interference with an employee's rights under the law . . . .  The Act's prohibition against 'interference' prohibits an employer from discriminating or retaliating against an employee or prospective employee for having exercised or attempted to exercise FMLA rights."  29 C.F.R. § 825.220(c).[5]  Thus, where, as here, an employee survives summary judgment on

---

   [4] As it relates to an adverse employment action, the City also states that "Green did not in his Complaint nor in [h]is EEOC charge of discrimination mention any allegations concerning his supervisor Ricky Davis.  It is the City's contention that Plaintiff cannot now use these allegations to posture position."  Doc. 27, at 8-9 (citing Fed. R. Civ. P. 8; *Freeman v. Koch Foods of Ala.*, 777 F. Supp. 2d 1264 (M.D. Ala. 2011)).  The City's reliance on *Freeman* is misplaced because *Freeman* provided only that a plaintiff could not allege a new *claim* through summary judgment briefing.  777 F. Supp. 2d at 1286.  Here, Green alleged retaliatory discharge in his complaint, doc. 1, at 4, and the evidence concerning Ricky Davis merely supports this claim.  The court cannot restrict a plaintiff to only the alleged facts in the plaintiff's complaint.  To do so would preclude discovery and run afoul of the Fed. R. Civ. P. 8 liberal pleading standard.

   [5] "Congress delegated to the Secretary of Labor the authority to 'prescribe such regulations as are necessary to carry out' the FMLA's general requirements for leave."  *Russell v.*

an FMLA retaliation claim, the employee also presents a genuine issue of material fact regarding interference with FMLA rights.  Put differently, Green sufficiently asserts a jury question as to whether the City constructively discharged him for taking FMLA leave.  If the City discriminated against Green for utilizing the FMLA, then it also interfered with Green's FMLA rights.  Accordingly, the City's motion for summary judgment on this claim is **DENIED**.[6]

B.    *ADA*

Green maintains that the City violated the ADA because it "firmly believed that Green's condition after open heart surgery substantially limited his ability to work," but failed to reasonably accommodate this perceived disability and also retaliated against Green because of the disability.  Doc. 24, at 20-30; doc. 1, at 6-7.  "A *prima facie* case of employment discrimination under the ADA is established by demonstrating that Plaintiff[]: (1) [has] a disability; (2) [is] qualified, with or

_____

*N. Broward Hosp.*, 346 F.3d 1335, 1344 (11th Cir. 2003) (quoting 29 U.S.C. § 2654).

    [6] Green also argues that the City's "own policy interferes with the FMLA rights of Green, and every other employee of the Defendant seeking FMLA leave, because it does not guarantee the employee seeking leave his or her job back."  Doc. 24, at 35 (citing doc. 25-20).  While Green may continue to pursue the claim that the City interfered with *his* FMLA rights, the City's Leave of Absence policy does not categorically violate the FMLA.  Namely, there is no strict liability under the FMLA if an employee is not returned to the same position after taking leave. *See Parris v. Miami Herald Pub. Co.*, 216 F.3d 1298, 1301 n.1 (11th Cir. 2000) ("[I]f an employer interferes with an employee's right to reinstatement under the FMLA, the employer bears the burden of proving that the employee would have been laid off during the FMLA period for reasons unrelated to the employee's condition, and therefore is not entitled to restoration."); *Throneberry v. McGehee Desha Cnty. Hosp.*, 403 F.3d 972 (8th Cir. 2005) ("[A]n employer who interferes with an employee's FMLA rights will not be liable if the employer can prove it would have made the same decision had the employee not exercised the employee's FMLA rights.").

without reasonable accommodations; and (3) [was] unlawfully discriminated against because of [his] disability." *Rossbach v. City of Miami*, 371 F.3d 1354, 1356-57 (11th Cir. 2004) (citing 42 U.S.C. § 12112(a)).  The ADA defines "disability" as "'(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment.'" *Id.* at 1357 (quoting 42 U.S.C. § 12102(2)).  Here, the City argues that summary judgment is appropriate because Green is not "disabled" as defined by the ADA.  Doc. 20, at 20-25; doc. 27, at 9-12.  The City overlooks, however, that Green agrees he is not disabled and filed this lawsuit because he contends that the City erroneously regarded him as disabled when, in fact, he was able to and wanted to continue working for the City.  Doc. 24, at 30-31.

To prevail under this theory, Green "must show two things: (1) that the perceived disability involves a major life activity; and (2) that the perceived disability is 'substantially limiting' and significant." *Rossbach*, 371 F.3d at 1360 (citing *Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999)).  *See also Hilburn v. Murata Elecs. N. Am.*, 181 F.3d 1220, 1230 (11th Cir. 1999) ("As with actual disabilities, a perceived impairment must be believed to substantially limit a major life activity of the individual.").  Thus, "under the 'regarded as' prong, a person is 'disabled' if h[is] employer perceives h[im] as having an ADA-qualifying disability, even if there is no factual basis for that perception.  As with actual impairments, however, the perceived impairment must be one that, if real, would

Page 13 of  21

limit substantially a major life activity of the individual." *Carruthers v. BSA Adver., Inc.*, 357 F.3d 1213, 1216 (11th Cir. 2004).

Green alleges that the ADA-qualifying disability— believed by the City to "substantially limit[] his ability *to work*"—is his "condition after open heart surgery." *See* doc. 24, at 31 (emphasis added). While *working* is certainly considered a "major life activity," *see Carruthers*, 357 F.3d at 1216, to establish an ADA discrimination claim, Green must show that the City perceived him as "'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.'" *Id.* (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Indeed, "'[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.'" *Id.* (quoting 29 C.F.R. § 1630.2(j)(3)(i)).[7] And as such, "an impairment must preclude—or at least be perceived to preclude—an individual from more than one type of job, even if the job foreclosed is the individual's job of choice." *Id.*

In *Rossbach v. City of Miami*, the Eleventh Circuit offered guidance in defining "a class of jobs or a broad range of jobs." 371 F.3d at 1360-62. The court considered whether a "'police officer' is a 'class of jobs' or 'broad range of

---

[7] "As both parties have relied upon the EEOC regulations interpreting the ADA as reasonable, we follow the lead of the Supreme Court and assume that the regulations are reasonable in the guidance they provide." *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 507 F.3d 1306, 1311 n.6 (11th Cir. 2007) (citing *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 194 (2002) (superseded by statute on other grounds)).

jobs' for ADA purposes." *Id.* at 1360.  The court held that "[i]f jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs.  Similarly, if a host of different types of jobs are available, one is not precluded from broad range of jobs."  371 F.3d at 1360 (citations and quotation marks omitted).  Accordingly, the court found that "police officer" is "too narrow a range of jobs to constitute a 'class of jobs,'" and concluded that the perceived inability to perform the functions of a "police officer" did not constitute a "disability" under the ADA.  *Id.* at 1361-62.

Similarly, in *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366 (11th Cir. 1998), the court considered plaintiff's contention that "Delta perceived him as having a mental impairment substantially limit[ing] the major life activity of working." *Id.* at 1369.  Specifically, plaintiff asserted that Delta regarded him as disabled because "Delta perceived him as 'unable' . . . to pilot airplanes for anybody." *Id.* at 1370.  The Eleventh Circuit disagreed and held that "[e]ven accepting as true that Delta perceived [plaintiff] as unable to pilot airplanes because of mental or emotional problems, we conclude that piloting airplanes is too narrow a range of jobs to constitute a 'class of jobs' as that term is defined" by the Secretary of Labor. *Id.*  Furthermore, the court found that "[t]here are non-piloting jobs in the Atlanta area which utilize 'similar training, knowledge, skills or abilities' as piloting jobs." *Id.*  Therefore, the court held that, despite the alleged perception that plaintiff could no longer pilot airplanes, plaintiff failed to demonstrate a "disability" under the ADA. *Id.* at 1371.

Conversely, in *Rodriguez v. Conagra Grocery Products Co.*, 436 F.3d 468, 477 (5th Cir. 2006), the court found that certain statements and actions by the employer's decision makers revealed a perception that plaintiff's diabetes prevented him from obtaining any form of employment.  Namely, the employer failed to offer plaintiff entry level production employment—"a job that, because it requires only the most basic skills and abilities, virtually any able-bodied person could perform it."  *Id.*  Indeed, one decision maker found plaintiff "unfit to perform *any* manual labor job."  *Id.* (emphasis in original).  Thus, the Fifth Circuit concluded that the employer "regarded [plaintiff's] diabetes as substantially limiting his ability to engage in the major life activity of working."  *Id.*

Here, Green presents sufficient evidence for a reasonable jury to find that the City regarded him as substantially limited in the major life activity of working because of his "condition after open heart surgery."  *See* doc. 24, at 30-31.  Green testified that Yates repeatedly stated to Green that he needed to seek disability retirement.  *See* doc. 25-4, at 7, 13.  Moreover, taken in the light most favorable to Green, Green's immediate supervisor, Davis, threatened that Green needed to take a meeting on the Eighth floor, presumably where the City's personnel/disability department is located, "or else."  Doc. 25-3, at 17.  Through Yates and Davis' demands that Green enter disability retirement, a reasonable jury could infer that the City perceived Green as unable to perform *any* work.  The City produces no evidence that it offered Green different employment positions or explored possible opportunities outside of Green's job as an HVAC technician.  *See e.g.*, *Czopek v.*

*Gen. Elec. Co.*, No. 93 C 7664, 1995 WL 374036 (N.D. Ill. June 21, 1995)

(finding that defendants did not regard plaintiff as substantially limited in the

major life activity of working because defendants met with plaintiff to consider

other possible job opportunities).  Rather, for purposes of summary judgment, the

City perceived that Green could no longer perform any meaningful work because

it attempted to force Green into disability retirement.  Accordingly, unlike *Witter*

and *Rossbach* where defendants regarded plaintiffs as unable to pilot an airplane

or perform the functions of a police officer, *see* 138 F.3d at 1370; 371 F.3d at

1361-62, here, the City offers no evidence that it merely perceived an inability by

Green to perform the specific functions of an HVAC technician or even some type

of technician in general.  Instead, similar to *Rodriguez*, 436 F.3d at 477, by

attempting to force Green into disability retirement, or completely out of the

workplace, the evidence supports the conclusion that the City believed Green

could not perform *any* employment function.

Therefore, Green's testimony regarding Yates and Davis' conduct is

sufficient to preclude summary judgment, and a jury is best suited to decide

whether the City, in fact, believed that Green's post-bypass condition substantially

limited his ability to perform a "broad range of jobs."  Put differently, there is a

disputed issue of material fact as to whether the City regarded Green as "disabled"

for purposes of the ADA, and, therefore, the City's motion for summary judgment

on the ADA claim is **DENIED**.[8]

C.      *Ala. Code § 21-7-8*

Green also asserts a state law claim for disability discrimination under Ala.

Code § 21-7-8 (1975), and he asks this court to "expressly decide . . . that § 21-7-8

provides a private cause of action for disability discrimination under Alabama

law." Doc. 24, at 37-38. However, no court has explicitly found that § 21-7-8

provides a private cause of action. In *Ethridge v. State of Alabama*, 847 F. Supp.

903, 908 (M.D. Ala. 1993), the court implied that this section failed to sufficiently

create a private cause of action:

> In determining whether an Alabama statute creates a private cause of
> action, it is this court's "duty to ascertain and effectuate the
> legislative intent expressed in the statute, which may be gleaned from
> the language used, the reason and necessity for the act, and the
> purpose sought to be obtained." *Bama Budweiser of Montgomery,
> Inc. v. Anheuser–Busch, Inc*., 611 So. 2d 238, 248 (Ala. 1992). When
> § 21-7-8 was passed along with other provisions in 1975, the
> preamble stated only that it was "setting forth a state employment
> policy." 1975 Ala. Acts 1711. Whether § 21-7-8 creates a private

---

[8] In its motion on the ADA claim, the City only addresses Green's "disabled" status, as
defined by the ADA, and does not address the other *prima facie* elements. Doc. 20, at 20-25;
doc. 27, at 9-12. Green, however, sufficiently establishes the remaining *prima facie* elements in
his response. Doc. 24, at 20-33. Moreover, as Green proceeds on a "regarded as" theory of
disability, beginning on January 1, 2009—the effective date of the Americans with Disabilities
Act Amendments Act ("ADAAA")—the City cannot be liable for damages based on a failure to
accommodate this perceived disability. *See* 42 U.S.C. § 12201(h) (providing that, effective
January 1, 2009, covered entities need not "provide a reasonable accommodation or a reasonable
modification" to an individual who meets the "regarded as" definition of disability); *but see*
*D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1235-40 (11th Cir. 2005) (finding, prior to the
ADAAA, that employees "regarded as" disabled were entitled to accommodations). Therefore,
Green must rely on other forms of discrimination prohibited under the Act to recover for
damages allegedly occurring after January 1, 2009. *See* 42 U.S.C. § 12112.

> cause of action appears to be an open question, and the language of
> the statute and dearth of case law provide this court with little
> guidance.

*Id.* (emphasis added).  However, the *Ethridge* court ultimately refrained from

deciding this question because it concluded that plaintiff's ADA claims would

encompass any possible claim under § 21-7-8.  *Id.*  Similarly, in *Mobile Fire*

*Fighters Association v. Personnel Board of Mobile County*, 720 So. 2d 932, 939-

40 (Ala. Civ. App. 1998), the court stated: "[A]ssuming, without deciding, that §

21-7-8 affords [plaintiff] a private cause of action, such a cause of action would

necessarily arise from the same alleged fact situation as his ADA claim."

Accordingly, the court affirmed the trial court's dismissal of plaintiff's claim

under § 21-7-8.

Indeed, under Alabama law, "[o]ne claiming a private right of action within

a statutory scheme must show clear evidence of a legislative intent to impose civil

liability for a violation of the statute."  *Am Auto. Ins. Co. v. McDonald*, 812 So. 2d

309, 311 (Ala. 2001).  Here, Green fails to provide such clear evidence as it relates

to a private cause of action under Ala. Code § 21-7-8.  The statutory language

provides that:

> It is the policy of this state that the blind, the visually handicapped
> and the otherwise physically disabled shall be employed in the state
> service, the service of the political subdivisions of the state, in the
> public schools and in all other employment supported in whole or in
> part by public funds on the same terms and conditions as the
> able-bodied, unless it is shown that the particular disability prevents
> the performance of the work involved.

Ala. Code § 21-7-8.  Moreover, the "Declaration" of this policy merely establishes that "[i]t is the policy of this state to encourage and enable the blind, the visually handicapped and the otherwise physically disabled to participate fully in the social and economic life of the state and to engage in remunerative employment."  Ala. Code § 21-7-1.  As the explicit language of this Chapter offers no private cause of action, and no Alabama court has found otherwise, this court refuses to unilaterally create a cause of action under Alabama law.  Therefore, the court **GRANTS** the City's motion for summary judgment on this claim.

D.     *Punitive Damages*

Finally, the City seeks to preclude Green's recovery of punitive damages under the ADA and Ala. Code § 21-7-8.  *See* doc. 20, at 26-27.  The state law claim is dismissed and therefore any possible punitive damages arising from such claim are also precluded.  Moreover, Green may not recover punitive damages for his ADA claim. The ADA specifically provides that "[a] complaining party may recover punitive damages under this section against a respondent (*other than a government, government agency or political subdivision*) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual."  42 U.S.C. § 1981a(b)(1) (emphasis added).  Thus, the plain statutory language clearly prohibits the recovery of punitive damages against the City, a political subdivision, for alleged ADA violations, and the City's motion on the punitive damages claim is **GRANTED**.

## IV.   CONCLUSION

This case will proceed to trial by jury on the FMLA retaliatory discharge, FMLA interference, and ADA disability discrimination claims.  Green may not recover under Ala. Code § 21-7-8, and Green may not recover punitive damages against the City.

Done the 5th day of March, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE